TAX COURT OF NEW JERSEY



**Joshua D. Novin**
**Judge**

**Court & Washington Streets**
**P.O. Box 910**
**Morristown, New Jersey 07963-0910**
**Tel: (973) 656-3931 Fax: (973) 656-4305**

NOT FOR PUBLICATION WITHOUT THE APPROVAL
OF THE TAX COURT COMMITTEE ON OPINIONS

May 8, 2017

Mr. H. Scott Gurvey
Amy R. Gurvey, Esq.
315 Highland Avenue
Upper Montclair, New Jersey 07043

Gary D. Gordon, Esq.
Feinstein, Raiss, Kelin & Booker, LLC
290 W. Mt. Pleasant Avenue, Suite 1340
Livingston, New Jersey 07039

> Re: <u>H. Scott Gurvey by Amy R. Gurvey, Esq. v. Montclair Township</u>
> Docket No. 000339-2011

Dear Mr. and Mrs. Gurvey and Mr. Gordon,

This letter constitutes the court's opinion with respect to plaintiffs' motions: (1) to compel discovery; (2) to admit facts into evidence; (3) to find defendant in contempt of court; (4) for entry of a writ of mandamus; (5) for leave of court to file an amended complaint; and (6) to vacate the court's December 14, 2011 order, enter reassessment effective December 14, 2011, and for an injunction.

For the reasons explained more fully below, the court denies plaintiffs' motions. However, the court grants leave, under <u>R.</u> 8:6-1(a)(4), directing defendant, Montclair Township, to: (i) furnish plaintiffs with answers to the Tax Court's Standard Interrogatories to be Served on Municipality within sixty (60) days of the date hereof; and (ii) furnish responses to plaintiffs' April 8, 2016 requests for admissions within thirty (30) days of the date hereof. In addition, the

court directs plaintiffs to furnish defendant with copies of any environmental studies, analysis and reports for the subject property (as such term is defined herein), that have not been previously furnished to defendant, within sixty (60) days of the date hereof.

I.      **Factual Findings and Procedural History**

Plaintiffs, H. Scott Gurvey and Amy R. Gurvey ("plaintiffs") are the owners of the real property and single-family dwelling located at 315 Highland Avenue, in the Township of Montclair, County of Essex and State of New Jersey (the "subject property"). The subject property is designated Block 705, Lot 1 on the municipal tax map of the Township of Montclair ("defendant").

The 2011 tax year assessment on the subject property was as follows:

|                |           |
|----------------|-----------|
| Land:          | $522,000  |
| Improvements:  | $330,000  |
| Total          | $852,000  |

Plaintiffs allege that on or about May 5, 2009, the single-family dwelling on the subject property suffered water damage as a result of broken pipes, causing water to infiltrate the plaster ceiling in the living room and kitchen, and affecting the entrance, foyer, living room, dining room and kitchen. According to plaintiffs, soon thereafter a water remediation firm arrived at the subject property, apparently retained by plaintiffs' homeowners insurance carrier, to "remediate" the damage to the dwelling. Certifications previously submitted by plaintiffs to the court recite that the remediation firm removed parts of the affected ceilings, causing them to collapse. Moreover, plaintiffs assert that the remediation firm did not seal off the unaffected portions of the dwelling

or the ductwork to its central air conditioning system, resulting in debris being spread throughout other parts of the dwelling.[1]

Subsequent investigation was apparently undertaken by an environmental consultant retained by plaintiffs' homeowners insurance carrier. According to that consultant's report, chrysotile asbestos fibers existed in a sample taken from the plaster ceiling in the kitchen area. Additionally, said report indicated that sampling of select areas of the home revealed the presence of varying mold spore growth. The report offered a series of conclusions and recommendations regarding remediating the condition of the dwelling.

Plaintiffs subsequently engaged a firm to undertake the asbestos and mold abatement in the dwelling, during which time plaintiffs and their pet resided off-premises. Plaintiffs allege that the "cleanup continued until December 14, 2011, when Defendant Montclair closed out all the construction permits."

Plaintiffs assert that during the remediation, defendant was made aware of the ongoing remediation and repair work being performed to the dwelling on the subject property and that "letters were sent to Montclair Tax Assessor. . . requesting an abatement of property taxes for the period during which the house could not be occupied or sold." However, according to plaintiffs, defendant's tax assessor did not respond to those letters.

In 2009, plaintiffs' filed a Petition of Appeal with the Essex County Board of Taxation contesting the local property tax assessment on the subject property. On October 27, 2009, the Essex County Board of Taxation issued a Memorandum of Judgment, under appeal no. 13-0900497, reducing the subject property's 2009 tax year assessment from $925,400 to $852,000.

---

[1] In or about 2010, plaintiffs apparently initiated litigation against their homeowners insurance carrier and the firms engaged by their homeowners insurance carrier to remediate the damage to the single-family dwelling on the subject property, seeking declaratory judgment, compensatory damages, consequential damages, and punitive damages.

3

On December 21, 2009, plaintiffs submitted a letter to the Tax Court stating that the "October 27, 2009 [Memorandum of Judgment] is hereby appealed and taxpayer takes appeal from the whole and every part thereof."

In response to plaintiffs' letter, on December 24, 2009, the Clerk of the Tax Court assigned the matter a docket number and issued plaintiffs a "10 day deficiency notice." The deficiency notice acknowledged receipt of plaintiffs' December 21, 2009 letter and enclosed "a package of complaint forms, which must be completed and retransmitted to the Tax Court Management Office." The deficiency notice further advised plaintiffs that "you must retransmit the forms, along with any filing fees due, within 10 days of the date of this letter. Otherwise, the filing date will be the date the Tax Court receives the retransmitted forms with the required fee."

Having received no response from plaintiffs to the "10 day deficiency notice," on June 25, 2010 the Clerk of the Tax Court administratively closed the 2009 matter.

On February 15, 2011, plaintiffs filed a complaint with the Tax Court. The complaint asserts that the 2009, 2010 and 2011 tax years' assessments are in contest and seeks relief from the court, including "permanent tax abatement to $736,000 and refund of all edifice taxes since 5-5c date [May 5, 2009]. Home internally collapsed because of contamination with toxic levels of crystalline asbestos and mold – uninhabitable – due to leaks – lack of power."

Plaintiffs also filed a Petition of Appeal with the Essex County Board of Taxation challenging the 2011 local property tax assessment on the subject property. On August 4, 2011, the Essex County Board of Taxation issued a Memorandum of Judgment affirming the 2011 tax year assessment on the subject property.

As a result of the allegations contained in plaintiffs' 2011 Tax Court complaint, questions arose regarding the court's subject matter jurisdiction to hear plaintiffs' challenges to the 2009,

4

2010 and 2011 tax year assessments on the subject property. Accordingly, the court afforded the parties the opportunity to submit briefs addressing those jurisdictional issues and scheduled an evidentiary hearing. Following the hearing, on December 13, 2011, Judge Narayanan delivered an oral opinion concluding that the court lacked subject matter jurisdiction over plaintiffs' tax appeals for the 2009 and 2010 tax years. The court concluded however, that the Tax Court was vested with subject matter jurisdiction over plaintiffs' 2011 tax year appeal. On December 14, 2011, Judge Narayanan entered an order memorializing the conclusions reached in that opinion.

Plaintiffs subsequently submitted letters to the court on December 14, 2011 and December 16, 2011, seeking reconsideration of the court's December 14, 2011 order and for disqualification and recusal of Judge Narayanan.

On February 23, 2012, Judge Narayanan issued a letter opinion and order denying plaintiffs' motion for reconsideration and denying plaintiffs' motion for disqualification and recusal.

On February 29, 2012, Judge Narayanan entered a Case Management Order directing, in part, that: (1) "[a]ll discovery, pending or otherwise, shall be completed no later than April 30, 2012;" (2) "inspection of the subject property by the defendant. . . shall be completed no later than April 16, 2012;" (3) "the parties shall mutually exchange and serve their respective, trial-ready expert reports. . . no later than June 29, 2012;" and (4) "[t]rial in the matter will be held on Friday, July 13, 2012. . ."

On July 13, 2012, plaintiffs failed to appear for the scheduled trial and on July 20, 2012 Judge Narayanan entered an order and final judgment dismissing plaintiffs' complaint in the above matter with prejudice for lack of prosecution. Plaintiffs subsequently took appeal of the court's July 20, 2012 order.

On May 5, 2014, the Appellate Division of the Superior Court of New Jersey issued a letter opinion reversing the court's July 20, 2012 order, and remanding the matter back to the Tax Court to reconsider whether plaintiffs' failure to appear for the July 13, 2012 trial constituted excusable or contumacious conduct. Thereafter, plaintiffs filed a petition for certification with the New Jersey Supreme Court apparently challenging the Appellate Division's opinion, which petition was denied with costs on February 11, 2015.

On March 12, 2015, Judge Sundar entered an order vacating the court's July 20, 2012 order and reinstating this matter to the active trial calendar. Simultaneously therewith, the above matter was reassigned to the undersigned for further proceedings.

On November 2, 2015, plaintiffs' filed a motion with the court, under R. 8:8-1(b), seeking to submit the matter to the court for consideration without trial. By letter dated November 4, 2015, the court advised the parties that it would treat said motion as a motion for summary judgment under R. 4:46-1. Accordingly, the court afforded plaintiffs until November 20, 2015 to submit a brief and any other documents in support of their motion, and assigned December 18, 2015 as the return date for said motion. On November 18, 2015, the court received plaintiffs' brief, material statement of facts and exhibits supporting their motion. In support of their motion, plaintiffs' submitted: select portions of a residential appraisal report that valued the subject property as of October 1, 2008; the report of Olmsted Environmental Services, Inc. dated December 23, 2009; Aztech Management, Inc.'s proposal dated March 19, 2010; a copy of plaintiffs' 4th Amended Complaint against their homeowners insurance carrier and other parties; and copies of construction permits issued by defendant between 2011 and 2012.

6

On February 10, 2016, this court entered an order denying plaintiffs' motion for summary judgment. This court set forth its findings of fact and conclusions of law in an oral opinion delivered on the record on February 9, 2016.

On April 12, 2016, plaintiffs submitted a "motion for reargument/reconsideration," of the court's February 10, 2016 opinion and order. Attached to plaintiffs' motion was a residential appraisal summary report from Robert P. Jaffe dated March 29, 2016 that expressed an opinion of value for the subject property as of the October 1, 2010 valuation date.

On May 10, 2016, defendant filed with the court a notice of Substitution of Attorney, substituting Feinstein, Raiss, Kelin & Booker, LLC, as counsel in this matter for Montclair Township.

On June 2, 2016, this court entered an order denying plaintiffs' motion for reconsideration. The court set forth its factual findings and conclusions of law in an oral opinion delivered on the record on June 2, 2016.

In addition, on or about April 5, 2016, plaintiffs forwarded a Subpoena Duces Tecum and Ad Testificandum (the "Subpoena") addressed to Matthew Noumoff, OPRA Custodian for the New Jersey Department of Banking and Insurance ("DOBI"). The Subpoena sought the following information: (1) the entire file or files (including any electronically stored information) maintained by the DOBI relating to plaintiffs and/or the subject property; and (2) requests, any all correspondent, emails, contracts, photographs, notes, reports, etc., relating to the subject property. On April 22, 2016, in response to the Subpoena, the DOBI filed a motion to quash under R. 1:9-2.

On June 15, 2016, this court issued a letter opinion and order quashing plaintiffs' Subpoena.

On May 31, 2016, plaintiffs filed motions with the court seeking entry of reassessed combined tax liability, effective December 15, 2011, and for an injunction against defendant (the "May 31, 2016 motions").

On June 28, 2016, plaintiffs filed motions with the court to compel discovery, to admit facts into evidence, and to find defendant in contempt of court (the "June 28, 2016 motions").

On July 7, 2016, plaintiffs moved, inter alia, for leave to file an interlocutory appeal with the Appellate Division of the Superior Court of New Jersey ("motion for leave to appeal"). Accordingly, the court adjourned disposition of plaintiffs May 31, 2016 motions and June 28, 2016 motions pending resolution of plaintiffs' motion for leave to appeal. In the motion for leave to appeal, plaintiffs sought the following relief from the Appellate Division: motion for reassessment of tax liability, motion for contempt sanctions, motion for immediate payment of refunds with interest and for an order that no further taxes may be collected, motion for unlawful taking, damages, attorney's fees and costs, motion to proceed as an indigent and motion to abbreviate the transcript.

On September 13, 2016, the Appellate Division of the Superior Court of New Jersey issued an order denying all counts of plaintiffs' motion for leave to appeal.

Apparently, thereafter plaintiffs filed a petition for certification with the New Jersey Supreme Court challenging the Appellate Division's September 13, 2016 order, which petition was denied on or about December 6, 2016.

On February 28, 2017, the court conducted a case management conference to address future proceedings in this matter, and set March 31, 2017 as the return date for plaintiffs' June 28, 2016 motions.[2] In scheduling such date, the court permitted plaintiffs to file additional motions with

2 During the February 28, 2017 conference, plaintiffs expressed their desire to withdraw the May 31, 2016 motions and confirmed such withdrawal in writing to the court on March 17, 2017.

the court to be heard on March 31, 2017, provided that such motions were filed with the court no later than March 15, 2017.

On March 17, 2017, plaintiffs submitted additional motions to the court seeking: entry of a writ of mandamus; leave of court to file an amended complaint; and to vacate the court's December 14, 2011 order, enter reassessment effective December 14, 2011 and for an injunction ("March 17, 2017 motions"). Because these additional motions were not timely filed for the March 31, 2017 return date, under R. 1:6-3, the court adjourned all pending motions to its April 13, 2017 motion calendar.

Thereafter, the court received on March 20, 2017 and on April 4, 2017, defendant's opposition to plaintiffs' June 28, 2016 motions and March 17, 2017 motions. However, timely service of defendant's opposition was not made on plaintiffs. Accordingly, the court further adjourned plaintiffs' motions to its April 28, 2017 calendar.

The court conducted oral argument on plaintiffs' motions on April 28, 2017.

## II. Conclusions of Law

### A. Motion to Compel Discovery; Motion to Admit Facts into Evidence

It is a well-settled principle that the rules of discovery are to be liberally construed, favoring litigants' rights to "broad pretrial discovery." Payton v. New Jersey Turnpike Authority, 148 N.J. 524, 535 (1997) (citing Jenkins v. Rainner, 69 N.J. 50, 56 (1976)). Our court system has long favored the view that "essential justice is better achieved when there has been full disclosure so that the parties are conversant with all the available facts." Jenkins, supra, 69 N.J. at 56. Nonetheless, "the scope of discovery is not infinite." K.S. v. ABC Professional Corp., 330 N.J. Super. 288, 291 (App. Div. 2000), motion for leave to appeal denied, 174 N.J. 409 (2000). Rather, discovery is limited by R. 4:10-2(a), affording litigants the right to "obtain discovery regarding

any matter, not privileged, which is relevant to the subject matter involved in the pending action. . ." R. 4:10-2(a).

Our court rules authorize parties to seek discovery in a variety of formats, including, by "[d]epositions upon oral examination or written questions; written interrogatories; production of documents or things; permission to enter upon land or other property, for inspection and other purposes; physical and mental examinations; and requests for admissions." R. 4:10-1.

Under R. 4:17-1(a), any party may serve upon any other party "written interrogatories relating to any matters which may be inquired into under R. 4:10-2. The interrogatories may include a request, at the propounder's expense, for a copy of any paper." R. 4:17-1(a).

Additionally, under R. 4:22-1, any party may serve upon any other party a "written request for the admission. . . of the truth of any matters of fact within the scope of R. 4:10-2. . ." R. 4:22-1. A request for admission is deemed admitted unless the receiving party, within thirty days following service of the request, furnishes an answer or objection to the request, signed by the party or by the party's attorney. R. 4:22-1. Requests for admissions are intended to afford the parties the opportunity to establish matters as true, for purposes of trial, when there is no controversy concerning their accuracy or truthfulness. Essex Bank v. Capital Resources Corp., 179 N.J. Super. 523, 532 (App. Div. 1981); Van Langen v. Chadwick, 173 N.J. Super. 517, 522 (Law Div. 1980); Hunter v. Erie R.R. Co., 43 N.J. Super. 226, 231 (Law Div. 1956).

However, when responsive information to validly issued and served discovery demands are not forthcoming, our court rules afford the aggrieved party the opportunity to move before the court for relief, including seeking an order determining the sufficiency or adequacy of a response, dismissal of the delinquent party's pleadings or compelling discovery. Motions to compel

10

discovery are found under the umbrella of R. 4:23.  Specifically, R. 4:23-1(a), provides, in part, that:

> If a deponent fails to answer a question propounded or submitted under R. 4:14 or 4:15, or a corporation or other entity fails to make a designation under R. 4:14-2(c) or 4:15-1, the discovering party may move for an order compelling an answer or designation in accordance with the request.
>
> [R. 4:23-1(a).]

When a party fails or refuses to admit the genuineness of any document or the truth of any matter for which requests for admissions have been submitted, the requesting party may make application to the court for the receiving party to pay the expenses incurred in making that proof, including reasonable attorney fees. R. 4:23-3.

Moreover, prior to seeking dismissal or suppression of a delinquent party's pleading, our court rules afford the party entitled to discovery the option to:

> move for an order compelling discovery demanded pursuant to R. 4:14, R. 4:18 or R. 4:19.  An order granting a motion to compel shall specify the date by which compliance is required. If the delinquent party fails to comply by said date, the aggrieved party may apply for dismissal or suppression pursuant to subparagraph (a)(1) of this rule by promptly filing a motion to which the order to compel shall be annexed, supported by a certification asserting the delinquent party's failure to comply therewith.
>
> [R. 4:23-5(c).]

Our court rules render the enforcement provisions of R. 4:23-5 applicable to the Tax Court. Specifically, R. 8:6-3 provides, in part, that: "[t]he provisions of R. 4:23-5 shall apply to proceedings in the Tax Court. . ."

In general, our court rules permit discovery to be taken in the Tax Court "in accordance with the provisions of R. 4:10-1 through R. 4:18-2 and R. 4:22 through R. 4:25." R. 8:6-1(a).

11

However, exceptions to that general rule exist. In matters cognizable in and assigned to the Tax Court's small claims division, discovery is expressly limited to:

> the property record card for the subject premises, inspection of the subject premises, a closing statement if there has been a sale of the subject premises within three (3) years of the assessing date, the costs of improvements within three (3) years of the assessing date, income, expense and lease information for income-producing property and information relating to a claim of damage to the property occurring between October 1 of the pretax year and January 1 of the tax year pursuant to N.J.S.A. 54:4-35.1. The court in its discretion may grant additional discovery for good cause shown.
>
> [R. 8:6-1(a)(4).]

Matters assigned to the small claims division of the Tax Court are designed "to be informal and subject to expedited procedures. . ." Pressler & Verniero, Current New Jersey Rules Governing the Courts, comment on R. 8:11 (2016). Thus, the court rules expressly authorize only a limited range of discovery and afford an abbreviated period of time for their accomplishment. These matters include: "cases in which the property at issue is a class 2 property (1-4 family residence). . . and all other local property tax cases in which the prior year's taxes for the subject property were less than $ 25,000." R. 8:11(a)(2). Moreover, our court rules limit the time period to complete discovery in small claims division matters to "75 days of the filing of the complaint." R. 8:6-1(a)(6)(i).

In addition, the Tax Court's rules of discovery require that parties' requests for discovery adhere to certain criteria and standards. Specifically, the court rules governing the Tax Court provide that "interrogatories and requests for production of documents shall be in the form and manner prescribed by the Tax Court." R. 8:6-1(a)(5) (emphasis added).

Here, in support of their motion to compel discovery, plaintiffs certify that, on September 13, 2011, they served upon defendant's former counsel thirty-six (36) interrogatories. However,

the interrogatories propounded by plaintiffs do not comport with the Tax Court's prescribed forms. Having received no response to their interrogatory demands, by letter dated January 12, 2012, plaintiffs advised defendant's former counsel that responses to plaintiffs interrogatories were past due. Accordingly, plaintiffs assert that they are entitled to an order compelling discovery under R. 4:23-1, and alternatively, that they "may additionally be entitled to an order striking Defendant's answer for failure to make discovery," under R. 4:23-5(a)(1) and R. 8:6-3.

In addition, in support of their motion to admit facts into evidence, plaintiffs certify that on or about April 8, 2016, they propounded on defendant's former counsel ten (10) requests for admissions. Although the chronology of dates is unclear from plaintiffs' certification, at some point after April 22, 2016 plaintiffs advised defendant's former counsel that responses to the requests to admit had not been received by plaintiffs and "are now overdue."3 Plaintiffs submit that the documents referred to in their requests for admissions contemplate "environmental report[s], remediation bids and plans, inventories of contaminated and disposed goods, files of state agencies, receipts for construction and remediation of the subject house and living expenses during the period the Plaintiffs were forced evacuation [sic] and countless other documents, including expert reports, depositions and testimony arising from Plaintiffs' civil action against their insurance carrier."

In opposition to plaintiffs' motion, defendant's counsel argues that despite its substitution as counsel for defendant on May 10, 2016, it in good faith and with due diligence attempted to retrieve former defendant's counsel's work file relative to plaintiffs' cause of action, however secured only limited information. Defendant's counsel further maintains that it was unaware of the existence of a banker's box of information that remained in possession of defendant's former

---

3 Plaintiffs' certification submits that the notice was dated April 9, 2016, however said notice refers to events that transpired after April 9, 2016.

13

counsel, which information was only recently transmitted to defendant's counsel. Defendant's counsel submits that defendant has now furnished plaintiffs with answers to the interrogatories and responses to the requests for admissions, and requests the court exercise its discretion and permit defendant to furnish late responses to the requests for admissions.4  See Delcampo v. New Jersey Auto. Full Ins. Underwriting Ass'n, 266 N.J. Super. 687, 693 (Law Div. 1993); Hungerford v. Greate Bay Casino Corp., 213 N.J. Super. 398, 403 (App. Div. 1986); Klimowich v. Klimowich, 86 N.J. Super. 449, 453 (App. Div. 1965).

The subject property consists of a single-family dwelling and thus, is a class 2 property. Accordingly, the above matter is assigned to the small claims division of the Tax Court and the scope of discovery is expressly limited by R. 8:6-1(a)(4).  Therefore, permission must be granted by the court prior to propounding interrogatory demands or any requests for admissions.  However, neither plaintiffs nor defendant's former counsel sought leave or authorization from the court to exceed the boundary and scope of permissible discovery under R. 8:6-1(a)(4).  Instead, defendant's former counsel apparently propounded interrogatories on plaintiffs and plaintiffs propounded on defendant's former counsel thirty-six interrogatory demands and ten requests for admissions.

Thus, plaintiffs' motions seek to compel discovery from defendant and admit facts into evidence from discovery demands that were not authorized by our court rules, or permitted by court order. R. 8:6-1(a)(4).  Implicit in the court rules is the principle that the scope of discovery being pursued must be authorized and properly served on the party from which discovery is sought. When the discovery sought exceeds the boundaries clearly delineated by our court rules, any

---

4 Attached to defendant's counsel's brief in opposition to plaintiffs' motions are nine "Responses to Plaintiffs' Request for Admissions" and defendant's "Answer to Interrogatories."  The court's review of defendant's "Answer to Interrogatories" reveals that a majority of the responses include the statement that: "This interrogatory is irrelevant and will not lead to discoverable evidence. Comparing assessments is not probative or relevant; "This interrogatory is irrelevant and will not lead to discoverable evidence since the only tax year on appeal is 2011 and any documents related to the assessment for 2007 is not probative or relevant;" and "This interrogatory is irrelevant and will not lead to discoverable evidence."

request for relief from the court to enforce production of that discovery is hollow. Because our court rules did not authorize plaintiffs to propounded interrogatories and requests for admissions from defendant, the court is without authority to punish the non-responsive party for alleged discovery violations. See Kellam v. Feliciano, 376 N.J. Super. 580 (App. Div. 2005).

Accordingly, because plaintiffs did not seek prior authorization from this court to serve their September 13, 2011 interrogatories and April 8, 2016 requests for admissions on defendant, the aforesaid discovery demands of plaintiffs were invalid. Therefore, the court denies plaintiffs' motions seeking to compel defendant to produce answers to the September 13, 2011 interrogatories and seeking to admit facts into evidence in response to the April 8, 2016 requests for admissions.

Nonetheless, the court recognizes that the instant matter presents facts and issues that are not prevalent in all small claims division matters, namely how alleged asbestos and mold contamination of the plaintiffs' single-family dwelling may have affected the subject property's true or fair market value as of the October 1, 2010 assessment date. Thus, although the discovery period in this matter under R. 8:6-1(a)(6)(i) long ago expired, the court is satisfied that in this matter, a judicious expansion of the scope of permissible discovery, as authorized by R. 8:6-1(a)(4), that includes the exchange of environmental studies, reports, receipts and expenses will meaningfully contribute to ensuring full disclosure of all available facts. The rudimentary goals and objectives of our rules of discovery are to "eliminate, as far as possible, concealment and surprise in the trial of lawsuits to the end that judgments rest upon real merits of the causes and not upon the skill and maneuvering of counsel." Oliviero v. Porter Hayden Co., 241 N.J. Super. 381, 387 (App. Div. 1990). Thus, affording parties, in uniquely qualified matters, moderate access to discovery augments those policy objectives. As Judge (later Justice) Jacobs observed almost 70 years ago:

15

Procedural rules should not in themselves be the source of any extensive litigation; they should be subordinated to their true role, i.e., simply a means to the end of obtaining just and expeditious determinations between the parties on the ultimate merits.

[Tumarkin v. Friedman, 17 N.J. Super. 20, 26-27 (App. Div. 1951), certif. denied, 9 N.J. 287 (1952) (citing Vanderbilt, The New Rules of the Supreme Court on Appellate Procedure, 2 Rutgers L. Rev. 1, 18 (1948)).]

Therefore, the court deems formal demand to be made on defendant to answer the Tax Court's Standard Interrogatories to be Served on Municipality, under R. 8:6-1(a)(5), as of the date of this letter opinion. Moreover, the court deems plaintiffs April 8, 2016 requests for admissions as being served on defendant as of the date of this letter opinion. Accordingly, defendant shall furnish plaintiffs with certified answers to Standard Interrogatories to be Served on Municipality within sixty (60) days of the date hereof. R. 4:17-4. In addition, defendant shall supply plaintiffs with responses to plaintiffs' April 8, 2016 ten requests for admissions within thirty (30) days of the date hereof. R. 4:22-1. Moreover, plaintiffs shall furnish defendant with copies of any environmental studies, analysis, and reports for the subject property within sixty (60) days of the date hereof, which information has not been previously furnished by plaintiffs to defendant.

Finally, any discovery sought by plaintiffs or defendant in this matter that exceeds the scope of the discovery expressly authorized herein or under the rules of court applicable to matters in the Tax Court's small claims division shall be subject to formal application and further order of the court.

B. Motion to hold defendant in Contempt of Court

In support of their motion to hold defendant in contempt, plaintiffs assert that on April 12, 2016 the court ordered defendant's former counsel to respond to plaintiffs' settlement demand by no later than April 22, 2016 and that defendant has failed to comply with this court's order.

16

Plaintiffs further maintain that: (i) in 2009, defendant "falsely filed with the Court results of a preliminary determination of the Tax Board, made pending results of toxicity tests still in progress as a final determination;" (ii) defendant "falsely assert[s] that Plaintiffs have not challenged assessments for years other than 2011, has repeatedly argued before the Tax Board that the Board has no jurisdiction to consider Plaintiffs' filings;" and (iii) "[i]n failing to keep the promises it made, the Township and its attorneys are in violation of the rules of professional conduct, RPC 3.3, Candor Toward the Tribunal, for making false statements and for offering evidence known to be false."

In opposition to plaintiffs' motion, defendant's counsel maintains that no order was entered by the court on April 12, 2016 "directing the Township of Montclair to settle this matter. There was no order from the court directing or mandating the Township of Montclair to engage in settlement discussions." Moreover, defendant's counsel asserts that the appraisal report submitted by plaintiffs "is, from the Township's perspective, a net opinion that does not fairly or properly consider and appraise the property as of October 1, 2010."

The court has conducted a review of the April 12, 2016 record of the case management proceedings in this matter. On that date, plaintiff, H. Scott Gurvey, reported to the court that the preceding week, plaintiffs' delivered to defendant's former counsel an appraisal report for the subject property, which appraisal report constituted plaintiffs' settlement demand in the matter. In response thereto, defendant's former counsel reported to the court that, "I expect that we will be able to get back to Mr. Gurvey and Mrs. Gurvey within seven days. Mr. Librizzi is very quick when it comes to analyzing." Accordingly, the court advised defendant's former counsel, "[l]et's see if we can get a response then back to the taxpayer by no later than the 22nd [April 22, 2016]." The court then advised plaintiff, "Mr. Gurvey, following receipt of the municipality's response, if

there is an offer, [and] I am not suggesting that there will be, but if there is an offer forthcoming," a response from plaintiffs should be communicated to defendant's former counsel by May 20, 2016. The court further advised Mr. Gurvey that if a response from defendant's former counsel was not received by April 22, 2016, Mr. Gurvey should contact defendant's former counsel to ascertain their response, if any.

The authority afforded our courts to impose a punishment for contempt is long-standing. In re Buehrer, 50 N.J. 501, 513 (1967). However, this authority must be "exercised sparingly against those whose conduct 'has the capacity to undermine the court's authority and to interfere with or obstruct the orderly administration of justice.'" Amoresano v. Laufgas, 171 N.J. 532 (2002) (quoting In re Daniels, 118 N.J. 51, 61 (1990)). As Justice Handler observed, "there are occasions when this inherent authority must be exercised both swiftly and summarily in order to ensure obedience to court orders and respect for court procedures." In re Yengo, 84 N.J. 11, 130 (1980).

When the alleged offense is committed in the presence of the court, our court rules afford the judge the opportunity to summarily adjudicate contempt, without issuance of an order to show cause, provided that the court consider five factors. Specifically, R. 1:10-1 provides, in part, that:

> A judge conducting a judicial proceeding may adjudicate contempt summarily without an order to show cause if:
>
> (a) the conduct has obstructed, or if continued would obstruct, the proceeding;
>
> (b) the conduct occurred in the actual presence of the judge, and was actually seen or heard by the judge;
>
> (c) the character of the conduct or its continuation after an appropriate warning unmistakably demonstrates its willfulness;
>
> (d) immediate adjudication is necessary to permit the proceeding to continue in an orderly and proper manner; and

(e) the judge has afforded the alleged contemnor an immediate opportunity to respond.

The order of contempt shall recite the facts and contain a certification by the judge that he or she saw or heard the conduct constituting the contempt and that the contemnor was willfully contumacious. Punishment may be determined forthwith or deferred . . .

[R. 1:10-1.]

However, when the alleged offense is committed outside the presence of the court, an order to show cause or order for arrest shall issue "specifying the acts or omissions alleged to have been contumacious." R. 1:10-2. A hearing on adequate notice is then conducted before a judge, other than the judge that instituted the proceeding, affording the alleged contemnor the opportunity to cross-examine the witnesses and to otherwise put on a defense.

Moreover, when the alleged conduct involves a violation of the rules of discovery, our trial courts are vested with "inherent discretionary power to impose sanctions. . . , subject only to the requirement that they be just and reasonable in the circumstances." Calabrese v. Trenton State College, 162 N.J. Super. 145, 151-52 (App. Div. 1978), aff'd, 82 N.J. 321; see also Lang v. Morgan's Home Equip. Corp., 6 N.J. 333, 339 (1951). Thus, when the alleged derisive conduct arises from a litigant or a representative's refusal or failure to appear, failure to permit or furnish discovery, or failure to obey a court order, the court is authorized to impose sanctions against the transgressing party. See R. 4:23-2(b); R. 1:2-4; State v. Kordower, 229 N.J. Super. 566 (App. Div. 1989). The scope of sanctions include, but are not limited to the following: refusing the disobedient party from asserting a claim or defense, barring the introduction of designated evidence, striking out all or parts of a pleading, or treating such conduct as a contempt of court. R. 4:23-2(b).

19

Here, the court concludes that the alleged conduct of defendant and/or defendant's representatives is not punishable as contempt in facie curiae, and does not require entry of an order to show cause for a summary contempt proceeding. As detailed above, at no time did the court order defendant to settle this matter. Instead, during a case management conference, defendant's former counsel represented to the court that defendant's tax assessor was in receipt of plaintiffs' appraisal report and that he expected to be in a position to respond to plaintiffs' settlement demand within seven days. Accordingly, the court directed defendant's former legal counsel to furnish a response, if any, to plaintiffs demand by April 22, 2016. Defendant's decision to decline to extend a settlement offer to plaintiffs in this matter does not amount to conduct deliberately designed to obstruct, hinder, frustrate or impede the judicial proceedings in this matter.

In addition, plaintiffs' motion provides no support for their allegations that defendant: (i) "falsely filed with the Court results of a preliminary determination of the Tax Board, made pending results of toxicity tests still in progress as a final determination;" (ii) "falsely assert[s] that Plaintiffs have not challenged assessments for years other than 2011, has repeatedly argued before the Tax Board that the Board has no jurisdiction to consider Plaintiffs' filings;" and (iii) violated RPC 3.3 of the Rules of Professional Conduct by "making false statements and for offering evidence known to be false." Without factual support either in the record, or in plaintiffs' moving papers, the court is unable to gauge the accuracy or inaccuracy of plaintiffs' allegations. Thus, the court cannot say that any conduct of defendant or defendant's representatives has obstructed, or if continued to persist would obstruct, the legal proceedings in this matter. Moreover, the court is unaware that defendant's counsel has: (i) knowingly made a false statement of material fact; (ii) failed to disclose a material fact, when disclosure was necessary to avoid an illegal, criminal or fraudulent act by a client; (iii) failed to disclose legal authority in the controlling jurisdiction; (iv) offered

20

evidence knowing it to be false; and (v) failed to disclose material evidence, knowing that it will reasonably mislead the tribunal. Therefore, the court has not been presented with any evidence to substantiate plaintiffs' allegations that defendant's counsel or former counsel violated RPC 3.3 of our Rules of Professional Conduct.

Accordingly, for the foregoing reasons, plaintiffs' motion to hold defendant or defendant's counsel in contempt of court is denied.

### C. Motion for Mandamus Order

#### 1. Writ of Mandamus

A writ of mandamus is an "order given by a court to a government official 'that commands the performance of a specific ministerial act or duty, or compels the exercise of a discretionary function, but does not seek to interfere with or control the mode and manner of its exercise or to influence or direct a particular result.'" In re Resolution of State Comm'n of Investigation, 108 N.J. 35, 45 n.7 (1987) (quoting Switz v. Twp. of Middletown, 23 N.J. 580, 598 (1957)); see also Loigman v. Twp. Comm. of Middletown, 297 N.J. Super. 287, 299 (App. Div. 1997). Because a writ of mandamus compels an official to perform a specific action or to exercise discretion, but not in a specific manner, it is an "extraordinary remedy, to be reserved for extraordinary situations." Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 289, 108 S. Ct. 1133, 1143, 99 L. Ed. 2d 296 (1988); see also Will v. United States, 389 U.S. 90, 88 S. Ct. 269, 19 L. Ed. 2d 305 (1967). However, the task sought to be performed by the writ must be certain, clearly established, indisputable and imperative. See Kerr v. United States District Court, 426 U.S. 394, 402-403, 96 S. Ct. 2119, 2123-2124, 48 L. Ed. 2d 725 (1976); Ivy Hill Park Apartments v. N.J. Prop. Liab. Ins. Guar. Ass'n, 221 N.J. Super. 131, 140 (App. Div. 1987), certif. denied, 110 N.J. 188 (1988).

21

Plaintiffs' motion seeks the court enter a "mandamus order directing George F. Librizzi, Tax Assessor, Township of Montclair, and Linda Wanat, Municipal Clerk, Township of Montclair, to accept plaintiffs' appeal of their 2017 property tax assessment and file their appeal form as timely filed." Plaintiffs assert that on March 6, 2017, "Amy Gurvey personally delivered copies of the [Petition of] appeal to the municipal tax assessor and the municipal clerk. The municipal tax assessor and the municipal clerk refused to accept the petition."

Plaintiffs contend that defendant's refusal to accept their appeal was not an isolated incident, but rather represents an "abusive practice and defiance [by Montclair Township] of Court orders and the rules of procedure." Plaintiffs assert that Montclair "Township has then argued before Tax Board several times by means of various tax assessor and a plethora of lawyers that [the Essex County] Tax Board could not hear plaintiffs' appeal due to the pendency of this case before [the] Tax Court."

Plaintiffs' further maintain that defendant's refusal to accept plaintiffs' 2017 Petition of Appeal is "a strategy to deny plaintiffs due process, and in falsely representing the statute to plaintiffs and before [the Essex County] Tax Board, [the] Township [of Montclair] is exhibiting abusive and disgraceful contact [sic], an abuse of power and a dereliction of its duty."

Finally, for the first time during oral argument, plaintiffs' asserted that they attempted to file a Petition of Appeal with the Essex County Board of Taxation on or about April 12, 2017. Plaintiffs' alleged that the tax board administrator refused to accept their Petition of Appeal as untimely. Plaintiffs insisted that defendant forwarded written notice to all taxpayers in Montclair Township that a municipal-wide reassessment was being undertaken for the 2017 tax year and therefore, they should have been afforded until May 1, 2017 to file a Petition of Appeal. However, plaintiffs were unable to furnish the court with a copy of the written notice during oral argument.

22

Accordingly, the court afforded plaintiffs until May 5, 2017 to submit the written notice to the court for consideration.[5]

In opposition to plaintiffs' motion, defendant's counsel stresses that "plaintiffs have the right and opportunity to file their tax appeal with the Essex County Tax Board." However, "[f]orwarding copies of an appeal to the Municipal Clerk or Municipal Assessor alone do not constitute the appropriate filing of a tax appeal. Those municipal representatives are to be sent copies of the Complaint that has been filed with the Essex County Tax Board." Defendant's counsel further emphasizes that "[s]ince the 2011 appeal is pending in the Tax Court, the Essex County Tax Board may enter a judgment affirming without prejudice the current assessed value and note that the appeal is Tax Court pending. Thereafter, the plaintiffs would have the right and opportunity to file an appeal with this court." Finally, defendant's counsel maintained during oral argument that Montclair Township is undergoing a district-wide revaluation effective for the 2018 tax year. Therefore, defendant's counsel asserts that plaintiffs attempt to submit a Petition of Appeal to the Essex County Board of Taxation after expiration of the April 1 deadline results in it being untimely.

Our State has detailed statutes, regulations and procedures for the timely filing of challenges to local property tax assessments.

N.J.A.C. 18:12A-1.6(c) provides, in part, that:

> A separate petition of appeal **shall be received and filed with the county board of taxation** on or before April 1 for each separately assessed property under appeal, or 45 days from the date the bulk mailing of notification of assessment is completed in the taxing district, whichever is later. . . If the assessed value of the property subject to the appeal exceeds $1,000,000, a taxpayer or taxing district has the choice to file a petition of appeal with the county

---

[5] On May 5, 2017, plaintiffs' submitted a copy of a February 27, 2017 letter from Professional Property Appraisers, Inc. which states, in part: ". . .a revaluation of all properties located in the Township of Montclair is currently underway. This program. . . will be implemented for the **Tax Year 2018**."

board of taxation or a complaint with the Tax Court in accordance with the Tax Court rules.

[N.J.A.C. 18:12A-1.6(c) (emphasis added).]

Moreover, N.J.A.C. 18:12A-1.6(j) provides, in part, that:

A petitioner **must file a copy of each petition with the assessor and municipal clerk personally or by regular mail**.

[N.J.A.C. 18:12A-1.6 (emphasis added).]

In addition, the Petition of Appeal and corresponding Instructions for Filing Petition of Appeal, promulgated by the Director of the Division of Taxation, mirror the regulatory language providing, in part, that:

Your appeal must be *received* **(not merely postmarked) by the county board of taxation** on or before April 1 of the tax year, or 45 days from the date the bulk mailing of Notification of Assessment is completed in the taxing district, whichever is later. An appeal received after the close of business hours on April 1, or 45 days from the date the bulk mailing of Notification of Assessment is completed in the taxing district, whichever is later, is untimely filed and will result in dismissal of the appeal.

[Form A-1 (2-17) (emphasis added).]

The Instructions for Filing Petition of Appeal further provide that:

(a) The original petition must be **filed with the county board of taxation**.
(b) A copy must be **served upon the assessor of the municipality** in which the property is located or, in the case of a municipal appeal, served upon the taxpayer.
(c) A copy must be **served upon the clerk of the municipality** in which the property is located or, in the case of a municipal appeal, served upon the taxpayer.
(d) A copy should be retained by the petitioner.
(e) Any supporting documents attached to the original petition must also be attached to the assessor's and municipal clerk's copies.

[Form A-1 (2-17).]

Thus, plaintiffs' assertion that entry of a writ of mandamus is required to enable plaintiffs to timely file an appeal challenging their 2017 local property tax assessment is not supported by

24

the law. To ensure that a timely challenge to their 2017 local property tax assessment was instituted, plaintiffs were required to file an original, duly signed and completed Petition of Appeal with the Essex County Board of Taxation no later than on April 1, or 45 days from the date the bulk mailing of Notification of Assessment was completed in Montclair Township. Thereafter, plaintiffs were required to furnish a copy of the Petition of Appeal to the assessor and clerk for the Township of Montclair. The submission of a Petition of Appeal to the municipal assessor or clerk does not alone constitute valid and timely filing of a Petition of Appeal under N.J.A.C. 18:12A-1.6(c). Only the timely submission of the duly completed and signed Petition of Appeal with the county board of taxation constitutes filing.

Nonetheless, the court's analysis of plaintiffs' motion seeking entry of a writ of mandamus begins with an axiomatic principal; the Tax Court is a court of limited jurisdiction. N.J.S.A. 2B:13-2. As our Supreme Court has observed, the narrow jurisdiction of the Tax Court is "defined by statute. . . It is against this comprehensive mosaic of procedural safeguards -- one with which continuing strict and unerring compliance must be observed." McMahon v. City of Newark, 195 N.J. 526, 529 (2008). The Tax Court's "jurisdiction is constrained by the language of its enabling statutes." Prime Accounting Dept. v. Township of Carney's Point, 212 N.J. 493, 505 (2013). The statutory jurisdiction conferred on the court is expressed, in part, as the authority "to review actions or regulations with respect to a tax matter of. . . (1) [a]ny State agency or official; (2) [a] county board of taxation; (3) [a] county or municipal official." N.J.S.A. 2B:13-2.

Our court rules mirror this statutory scheme, providing that:

> The Tax Court shall have initial review jurisdiction of all final decisions including any act, action, proceeding, ruling, decision, order or judgment including the promulgation of any rule or regulation of a County Board of Taxation, the Director of the Division of Taxation, any other state agency or official (including

the Motor Vehicle Commission), or any county or municipal official with respect to a tax matter.

[R. 8:2(a).]

However, it is well-settled that the Tax Court "lacks jurisdiction to entertain a proceeding in lieu of the prerogative writ of mandamus. . ." Alid, Inc. v. North Bergen Twp., 180 N.J. Super. 592, 598 (App. Div. 1981); see also Hernandez v. West New York, 18 N.J. Tax 438, 442 (1999). The Tax Court is authorized to "constitutionally exercise only that jurisdiction which the Legislature has seen fit to confer upon it. The jurisdiction conferred upon the [Tax] court. . . is limited to the hearing and determining of 'all tax appeals of such character as [on July 1, 1979 were] taken to, and heard and determined by, the Division of Tax Appeals in the Department of the Treasury.'" Alid, Inc., supra, 180 N.J. Super. at 601 (citing N.J.S.A. 2A:3A-3). An action or proceeding, in which "the nature of [relief is] *mandamus*, *viz.*, to compel the governing body to exercise discretionary functions, was, in the first instance, cognizable only in the Law Division of the Superior Court." Id. at 603. Thus, a complaint or application for relief that seeks entry of a writ of mandamus exceeds the delineated jurisdictional boundaries of the Tax Court.

Here, plaintiffs' 2011 local property tax complaint seeks the following relief "permanent tax abatement to $736,000 and refund of all edifice taxes since 5-5c date [May 5, 2009]. Home internally collapsed because of contamination with toxic levels of crystalline asbestos and mold – uninhabitable – due to leaks – lack of power." Stated differently, plaintiffs' complaint for relief seeks a reduction in the local property tax assessment levied on the subject property due to its alleged asbestos and mold contamination and physical condition. Plaintiffs' complaint does not seek relief in lieu of a prerogative writ.

26

Thus, since neither our court rules, nor the statutory authority that vests original jurisdiction with the Tax Court grants license to entertain actions in lieu of prerogative writ, this court is without authority to grant the relief sought by plaintiffs.

Accordingly, for the above-stated reasons, plaintiffs' motion seeking entry of a writ of mandamus is denied.

## 2. Freeze Act

Although plaintiffs did not allege a claim for Freeze Act relief in either their Notice of Motion or proposed Mandamus Order, plaintiffs' brief asserts that "the proper remedy after eight years of dispute is for this court to apply the Freeze Act to tax the assessment back to the 2009 level set by the Tax Board, further reduce it considering the power problems, and then review it year by year considering the nearly three year period the home was uninhabitable and unsaleable to arrive at a proper, current assessment."

In response, defendant asserts that plaintiffs are "clearly misconstruing the import and application of N.J.S.A. 54:51A-8, commonly known as the Freeze Act." Defendant's counsel points out that the Freeze Act, or similar statutory provisions, may apply, where a judgment not subject to further appeal has been entered by the Tax Court or county board of taxation. Here, defendant's counsel submits, no judgment has been rendered by the Tax Court, making application of the Freeze Act improper.

The Freeze Act, codified in N.J.S.A. 54:51A-8, was enacted to protect taxpayers who have successfully prosecuted a challenge to a local property tax assessment from "repeated yearly increases in the assessed value of property, not related to or justified by any changes increasing its market value . . . ." City of Newark v. Fischer, 8 N.J. 191, 199-200 (1951). N.J.S.A. 54:51A-8 provides, in part:

27

> Where a judgment not subject to further appeal has been rendered by the Tax Court involving real property, the judgment shall be conclusive and binding upon the municipal assessor and the taxing district, parties to the proceeding, for the assessment year and for the two assessment years succeeding the assessment year covered by the final judgment, except as to changes in the value of the property occurring after the assessment date. . . If as of October 1 of the pretax year, the property in question has been the subject of an addition qualifying as an added assessment. . ., the conclusive and binding effect of such judgment shall terminate with said pretax year.
>
> [N.J.S.A. 54:51A-8.]

The Freeze Act "applies both to judgments entered upon an adjudication and to consent judgments." Clearview Gardens Associates v. Parsippany-Troy Hills, 196 N.J. Super. 323, 328 (App. Div. 1984) (citing South Plainfield v. Kentile Floors, Inc., 92 N.J. 483, 489 (1983)). However, the statutory scheme specifically provides that when "there has been a change in value occurring after the assessment date, the Freeze Act valuations may be modified where a complaint is filed alleging such change or if there is a general revaluation of real property in the community." Id. at 329.

Application of the statute is mandatory and self-executing, thus once final judgment has been entered following the assessing date "the Freeze Act requires the assessor to comply. The taxpayer need not submit any affidavits concerning the lack of change in value or that there has been no general revaluation." Id. at 329; see also Grandal Entrps., Inc. v. Borough of Keansburg, 292 N.J. Super. 529, 536-37 (App. Div. 1996). A taxpayer need not file an appeal for the tax year for which Freeze Act protection is sought. Union Terminal Cold Storage Co. v. Spence, 17 N.J. 162, 167 (1954). Instead, the protections under the Act "may be invoked at the option of the taxpayer on motion for supplementary relief to the Tax Court under the caption of the Tax Court judgment for the base year to which the Freeze Act application is sought." R. 8:7(d).

Moreover, when a county board of taxation has rendered judgment and no review of such judgment is sought before the Tax Court, the "determination of the county board. . . shall be conclusive and binding upon the municipal assessor and the taxing district for the assessment year, and for the two assessment years succeeding the assessment year, covered by the judgment, except as to changes in value of the property occurring after the assessment date." N.J.S.A. 54:3-26. However, if as of October 1st of the pretax year, the property "has been the subject of an addition qualifying as an added assessment. . ., the conclusive and binding effect of such judgment shall terminate with said pretax year. N.J.S.A. 54:3-26.

Here, on October 27, 2009, following a hearing on plaintiffs' 2009 Petition of Appeal, the Essex County Board of Taxation issued a memorandum of judgment reducing the subject property's tax assessment from $925,400 to $852,000. Although, as detailed above, plaintiffs initially sought appeal of that judgment before the Tax Court, plaintiffs' failure to comply with the Tax Court's "10 day deficiency notice" resulted in the administrative closure of said matter. Thus, the October 27, 2009 judgment was "conclusive and binding upon the municipal assessor and the taxing district. . . for the two assessment years succeeding the assessment year. . ." N.J.S.A. 54:3-26. The court's review of the MOD-IV statements furnished by defendant's counsel confirms that defendant's tax assessor fixed the subject property's local property tax assessment for the 2010 and 2011 tax years at $852,000. Accordingly, plaintiffs received the benefit of application of the "freeze" provisions of N.J.S.A. 54:3-26 with respect to the Essex County Board of Taxation's October 27, 2009 judgment.

Moreover, the Tax Court has not entered any judgment with respect to the subject property for which relief is warranted under the Freeze Act. The protections afforded taxpayers under the Freeze Act may only be invoked after "a judgment not subject to further appeal has been rendered

29

by the Tax Court. . ." N.J.S.A. 54:51A-8.  Since no judgment has been rendered by the Tax Court, there is no basis for plaintiffs' request to invoke the provisions of the Freeze Act.

Accordingly, for the foregoing reasons, the court denies plaintiffs' request for relief under the Freeze Act and N.J.S.A. 54:3-26.

### D.  Motion for Leave to Amend Complaint; Entire Controversy Doctrine

Plaintiffs seek an order granting leave to amend their complaint to join plaintiffs' first mortgage holder, M&T Bank, Inc. ("M&T Bank"), as a defendant in this matter.  Plaintiffs assert that in 2017 M&T Bank, Inc. "unilaterally paid to defendant Montclair Township monies to be credited to plaintiffs' property tax account with [Montclair] Township" and that "the status of the tax account is the gravamen of this case."  Therefore, plaintiffs assert that the entire controversy doctrine requires this court "now [out] of necessity involve M&T, and M&T therefore must be joined as a defendant."  Plaintiffs argue that there is no detrimental impact to defendant, Montclair Township, in granting their motion, and that no amendment to the original counts of the complaint against defendant, Montclair Township, would be necessary.

In the proposed form of Amended Complaint annexed to the motion, plaintiffs' allege that in 2017 "M&T notified plaintiffs that it had become aware that plaintiffs property tax account with the Township [of Montclair] showed a balance in arrears and requested an explanation."  Plaintiffs assert that they "communicated with M&T" that "the amount of tax owed was in dispute" and maintained that "M&T's interest in the [subject] property was not threatened."  Plaintiffs contend that, in spite of their communication, M&T Bank "notified plaintiffs that it unilaterally paid to defendant Montclair Township monies to be credited to plaintiffs' property tax account with [the] Township [of Montclair]."  Thus, plaintiffs seek damages against M&T Bank, including declaratory judgment.

30

In response to plaintiffs' motion, defendant's counsel argues that the Tax Court should not hear claims for damages that arise from an alleged breach of contract. Defendant asserts that the gravamen of this matter is plaintiffs' challenge to the 2011 local property tax assessment on the subject property, not disputes with plaintiffs' mortgage holder over funding and disbursements from their mortgage escrow account. Defendant further charges that "M&T Bank's payment of taxes in 2017 is irrelevant and unrelated to that [2011 tax] appeal and should properly be brought in the Law Division by the plaintiffs against M&T Bank."

The entire controversy doctrine "'embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy.'" Highland Lakes Country Club & Cmty. Ass'n v. Nicastro, 201 N.J. 123, 125 (2009) (quoting Cogdell v. Hosp. Ctr. at Orange, 116 N.J. 7, 15 (1989)). Stated differently, the entire controversy doctrine "requires that a party who has elected to hold back from the first proceeding a related component of the controversy be barred from thereafter raising it in a subsequent proceeding." Wm. Blanchard Co. v. Beach Concrete Co., 150 N.J. Super. 277, 292-3 (App. Div. 1977), certif. denied, 75 N.J. 528 (1977). The entire controversy doctrine has become such a fundamental tenet of our modern civil justice system that it has been codified in our rules of court. Specifically, R. 4:30A provides, in part, that:

> Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by R. 4:64-5 (foreclosure actions) and R. 4:67-4(a) (leave required for counterclaims or cross-claims in summary actions).
>
> [R. 4:30A.]

31

The entire controversy doctrine "encompasses a mandatory rule for the joinder of virtually all causes, claims, and defenses relating to a controversy between the parties engaged in litigation." Cogdell, supra, 116 N.J. at 16. Based on this premise, leave to amend pleadings is generally, "freely given without consideration of the ultimate merits of the amendment." Howard v. University of Medicine and Dentistry of New Jersey, 338 N.J. Super. 33, 37 (App. Div. 2001), rev'd on other grounds, 172 N.J. 537 (2002) (citing Kernan v. One Washington Park, 154 N.J. 437, 456 (1998)). In accordance with R. 4:9-1:

> A party may amend any pleading as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is to be served, and the action has not been placed upon the trial calendar, at any time within 90 days after it is served. Thereafter a party may amend a pleading only by written consent of the adverse party or by leave of court which shall be freely given in the interest of justice. . .

> [R. 4:9-1.]

"While motions to amend pleadings are required by the express terms of the rule to be liberally granted, there remains nevertheless a necessary area of judicial discretion in denying such motions where the interests of justice require." Wm. Blanchard Co. v. Beach Concrete Co., 150 N.J. Super. 277, 299 (App. Div. 1977), certif. denied, 75 N.J. 528 (1977). When the claim or defense being asserted in the amended pleading "arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading," our courts have permitted the amendment to relate back to the original pleading date. R. 4:9-3. Thus, if the thrust of the allegations that are contained in the amended pleading relate to the "the underlying conduct, transaction or occurrence giving rise to some right of action or defense. . . [then] it should be readily allowed and the doctrine of relation back applied." Harr v. Allstate Insurance Co., 54 N.J. 287, 299-300 (1969). Conversely, if the proposed claims or defenses asserted in the amended

32

pleadings are not germane to, or arose from an event, or series of events, separate from the matters asserted in the original pleading, then joinder is inappropriate. Young v. Schering Corp., 275 N.J. Super. 221, 231 (App. Div. 1994); see also Branch v. Emery Transportation Co., 53 N.J. Super. 367, 375 (App. Div. 1958); Jackson v. Georgia-Pacific Corp., 296 N.J. Super. 1, 10-11 (App. Div. 1996), certif. denied, 149 N.J. 141 (1997). In considering whether to permit joinder, the potential preclusion of a claim in successive litigation is one factor that the court may consider. Howard v. UMDNJ, 338 N.J. Super. 33, 41-42 (App. Div. 2001), rev'd on other grounds, 172 N.J. 537 (2002).

In support of their assertion that the Tax Court possesses jurisdiction over a mortgage holder in a local property tax dispute, plaintiffs rely upon Chemical Bank New Jersey, N.A. v. City of Absecon, 13 N.J. Tax 1 (Tax 1992). In that matter, Chemical Bank New Jersey, N.A. ("Chemical Bank") instituted a local property tax appeal challenging the 1991 tax year assessment on a parcel of improved property. The municipality challenged Chemical Bank's standing to bring the action asserting that Chemical Bank was not a taxpayer, as such term was defined under N.J.S.A. 54:3-21. In considering Chemical Bank's standing, the court observed that: (i) the mortgagor was in default of its obligations to Chemical Bank under the mortgage and note; (ii) Chemical Bank instituted foreclosure proceedings against the mortgagor; (iii) an order was entered by the Superior Court of New Jersey, Chancery Division, on November 5, 1990 appointing the municipal tax collector, as rent receiver, and Chemical Bank, as the rent receiver's agent, to collect rents and income from the property; (iv) a foreclosure judgment was issued on May 7, 1991 in favor of Chemical Bank; (v) a foreclosure sale of the property was conducted on September 19, 1991, at which time Chemical Bank was the successful bidder; and (vi) Chemical Bank paid the real estate tax arrears for the 1990 tax year and three quarters of the real estate tax obligations for the property during 1991. Accordingly, relying, in part, on our Supreme Court's decision in

33

Village Supermarkets, Inc. v. West Orange Twp., 106 N.J. 628, 631 (1987), the court stated that the word "taxpayer" should not be strictly construed under N.J.S.A. 54:3-21 to mean only a property owner. The court concluded that "the mortgagee in this case, holding a mortgage in default and having paid taxes, possesses a 'sufficient ownership of the assessed property' so that it may be characterized as a taxpayer and the property may be considered its property for purposes of N.J.S.A. 54:3-21." Chemical Bank New Jersey, N.A., supra, 13 N.J. Tax at 11. The court further reasoned that there was "no reason to believe that the mortgagee will not adequately represent the owner's interest nor that it does not have the ability to mount and prosecute an effective appeal." Id. at 13.

Here, the proposed amended pleadings do not implicate plaintiffs status as aggrieved taxpayers, lack of standing to challenge the assessed value of the subject property, or that plaintiffs are being discriminated against by the assessed value of other property in their taxing district or county. N.J.S.A. 54:3-21. It is uncontested that plaintiffs were the owners and aggrieved taxpayers of the subject property during the 2011 tax year, and remain so, and seek a reduction in its assessment for the 2011 tax year. Thus, the facts, issues and principles espoused in Chemical Bank New Jersey, N.A., supra, bear no correlation to the facts and issues present in the instant matter. In property tax appeals, the Tax Court is charged with the "task. . . first to find the fair market value of the property. Then the proper tax assessment of the property is determined after the application of that portion of chapter 123 which is now codified at N.J.S.A. 54:51A-6. In all years the appropriate assessment is what is in issue before the court and the filing of the complaint opens that issue to the court." Passaic Street Realty Assoc., Inc. v. Garfield City, 13 N.J. Tax 482, 484 (Tax 1993).

34

Plaintiffs' proposed pleadings and claims against M&T Bank arise from allegations involving breach of contract and tortious interference and seeks relief including, declaratory judgment and monetary damages. Conversely, the focus of the court's inquiry in this matter is limited to a determination of the fair market value of the subject property as of the October 1, 2010 valuation date. If the court is satisfied, from the evidence presented, that it can make a determination of the subject property's fair market value, the court will apply the chapter 123 ratio to the court's concluded fair market value and fix the assessment for the 2011 tax year.

However, as stated above, the Tax Court is a court of limited jurisdiction. N.J.S.A. 2B:13-2. The statutory jurisdiction conferred on the Tax Court is expressed, in part, as the authority "to review actions or regulations with respect to a tax matter of. . . (1) [a]ny State agency or official; (2) [a] county board of taxation; (3) [a] county or municipal official." N.J.S.A. 2B:13-2. The core of the allegations contained in plaintiffs' proposed Amended Complaint are contractual matters, a dispute involving disbursements made from a mortgage escrow account by the mortgage lender to a third party. Thus, the nature of the challenges for which plaintiffs seek leave of court to amend pleadings "do[] not speak to the issues uniquely cognizable within the tax appeal process. . ." McMahon, supra, 195 N.J. at 544. When an adjudicative body "transcends its jurisdiction, the action [of such body] is a nullity." Nagy v. Ford Motor Co., 6 N.J. 341, 349 (1951). The Tax Court is not vested with jurisdictional authority to hear plaintiffs' claims against M&T Bank for breach of contract and tortious interference.

Accordingly, for the above stated reasons, plaintiffs' motion for leave to amend their pleadings is denied.

In this motion, plaintiffs ostensibly request the court enter judgments reducing the tax assessment on the subject property for the 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016 and 2017 tax years based on application of the Freeze Act, N.J.S.A. 54:51A-8; and in reliance on the residential appraisal summary report prepared by Robert P. Jaffe, expressing an opinion of the subject property's fair market value as of October 1, 2010. Plaintiffs further assert that defendant "entered unilateral overassessments [against the subject property] . . . in early December, 2009 before the environmental and power reports were delivered" to the Essex County Board of Taxation.

Plaintiffs' motion also requests this court enter an order "[v]acating the 2011 order of Mala Narayanan that plaintiff could not recover refunds plus interest from defendant for 2011 based on misapplication of NJ's Freeze Act."

Lastly, plaintiffs' seek entry of an injunction against defendant, Montclair Township, from: (1) "billing, collecting or attempting to collect any further taxes and penalties in 2016 and 2017 until all reassessments downward owing plaintiffs since 2009 are entered. . . and defendant Montclair has paid all tax refunds plus interest owed to plaintiffs;" and (2) "placing a tax lien on plaintiffs' property and from accepting any further past or current tax payments for plaintiffs' property from success-in-interest [sic] mortgagee for. . . M & T Bank of New York."

In response, defendant maintains that, contrary to plaintiffs' assertions, the Freeze Act is irrelevant to this matter. Defendant further challenges plaintiffs' claims that they "'duly filed ongoing tax appeals . . . before a Tax Board, this Court . . .' for all years subsequent to 2011" as "simply untrue." Defendant argues that "no record [exists] that any appeal was filed for any year subsequent to tax year 2011." Defendant points out that the only tax appeal year pending before

36

the Tax Court is 2011 and the court "does not have jurisdiction to alter the assessments on the property during those years other than 2011 nor restrain and enjoin the Township [of Montclair] from collecting taxes due and owing on the plaintiffs' property."

In addition, defendant asserts that plaintiffs "falsely contend that a 'preliminary abatement of $852,000' was 'unlawfully entered ex parte by [d]efendant's attorneys.'" Defendant highlights that subsequent to the 2011 tax year, the assessed value of the subject property was further reduced by Montclair Township "from $852,000 for every year."

Finally, defendant maintains that plaintiffs misrepresent the content of the court's December 14, 2011 order in this matter. Defendant emphasize that "the court ordered that it did not have subject matter jurisdiction over the plaintiffs' appeals for tax year 2009 and 2010 but did have subject matter jurisdiction to hear the plaintiffs' Complaint for tax year 2011." Thus, there having been no appeal taken by plaintiffs' of the court's December 14, 2011 order, "it remains inviolate."

## 1. Injunction

Injunctive relief is an equitable remedy prohibiting or commanding the performance of certain acts in order to protect property or other rights from irreparable injury. 42 Am. Jur. 2d Injunctions § 1 (2015). Injunctions can be in the form of temporary restraining orders, preliminary injunctions, or permanent injunctions, and, in New Jersey, "the authority to issue injunctive relief falls within the discretion of a court of equity." Horizon Health Ctr. v. Felicissimo, 135 N.J. 126, 137 (1994). However, injunctive relief is an exceptional remedy that must be exercised sparingly by the court and only to prevent damage of an "urgent necessity." Citizens Coach Company v. Camden Horse Railroad Company, 29 N.J. Eq. 299, 303 (1878). As our Supreme Court has cautioned, in granting injunctive relief:

37

[t]here is no power, the exercise of which is more delicate, which requires greater caution, deliberation and sound discretion, and which is more dangerous in a doubtful case, than the issuing of an injunction.

[Crowe v. De Gioia, 90 N.J. 126, 140 (1982) (quoting Citizen Coach Company, supra, 29 N.J. Eq. at 303).]

Under the standard expressed by the court in Crowe, the movant bears the burden of demonstrating that: 1) irreparable harm is likely if the relief is denied; 2) the applicable underlying law is well settled; 3) the material facts are not substantially disputed and there exists a reasonable probability of ultimate success on the merits; and 4) the balance of the hardship to the parties favors the issuance of the requested relief. Id. at 132-34.

Here, plaintiffs seek entry of an order reducing the tax assessment on the subject property for the 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016 and 2017 tax years and enjoining defendant from invoicing or collecting any property tax obligation imposed on the subject property and from placing a tax lien against the subject property for any unpaid balances.

The authority to impose a tax on real property is governed by Article VIII, Section 1, Paragraph 1(a) of the New Jersey Constitution, commonly referred to as the Uniformity Clause. The Uniformity Clause provides that all real property, in a taxing district, shall be assessed under uniform rules and according to the same standard of value. N.J. Const. art. VIII, § 1, para. 1(a). Our Supreme Court has long recognized the constitutional right of taxpayers to "equality of treatment in sharing the duty to pay real estate taxes." Twp. of West Milford v. Van Decker, 120 N.J. 354, 360-361 (1990) (quoting Murnick v. Asbury Park, 95 N.J. 452, 458 (1984)). This "dominant principle" is intended to ensure not only an equality of treatment, but a corresponding sharing of the burden in property assessments. Regent Care Center, Inc. v. Hackensack City, 362 N.J. Super. 403, 415 (App. Div. 2003) (quoting Baldwin Construction Co. v. Essex County Board

of Taxation, 16 N.J. 329, 340 (1954)). Our system mandates that a taxpayer be conferred "'treatment commensurate with that given his fellow taxpayers within the municipality' and that if it is not accorded [such treatment], he is entitled to a judicial or quasi-judicial remedy." Tri-Terminal Corp. v. Edgewater, 68 N.J. 405, 409 (1975) (quoting In re Appeals of Kents 2124 Atlantic Ave., Inc., 34 N.J. 21, 25 (1961)).

It is against this backdrop that municipal tax assessors are charged with the responsibility for determining the full and fair value of each parcel of real property in the taxing district at such price as, in his or her judgment, it would sell for at a fair and bona fide sale on October 1 next preceding the date on which the assessor shall complete his or her assessments. N.J.S.A. 54:4-23. Under N.J.S.A. 54:4-23 a municipal tax assessor is required to annually "determine the full and fair value of each parcel of real property situate in the taxing district at such price as, in his judgment, it would sell for at a fair and bona fide sale by private contract on October 1 next preceding the date on which the assessor shall complete his assessments…" N.J.S.A. 54:4-23.

In addressing the propriety of an order enjoining the assessment and collection of taxes, our Supreme Court has observed that:

> [G]overnment must function and to that end must have funds. It would be quite extraordinary to enjoin in a wholesale fashion the assessment or collection of taxes where the properties are lawfully taxable and the infirmity is claimed to reside in the valuation process . . . This essential public policy is reflected in N.J.S.A. 54:2-37, which provides that the review of the county equalization table by the Division of Tax Appeals 'shall not suspend the apportionment of moneys or collection of taxes.' The remedy for the alleged inequity cannot be one which will deny the public the vital services it needs. The question of a subsequent credit either under statute or judicial principle is of course another matter.. . .
>
> [Ridgefield Park v. Bergen County Board of Taxation, 31 N.J. 420, 428 (1960).]

One of the government's primary functions is to provide public services.  Accordingly, enabling taxpayers to levy challenges to local property tax assessments without any corresponding obligation to timely remit property tax obligations, would impose an unfair financial burden on taxing districts.  Therefore, our Legislature enacted legislation aimed at alleviating this burden. Lecross Associates v. City Partners, 168 N.J. Super. 96, 99 (App. Div. 1979) (concluding that "[t]he language of the statute and the accompanying Statement clearly disclose a legislative intent to provide a mode of relief to municipalities from the financial hardship resulting from an interruption in the flow of tax revenues.")

Accordingly, a taxpayer who seeks to appeal an assessment must "pay to the collector of the taxing district no less than the total of all taxes and municipal charges due, up to and including the first quarter of the taxes and municipal charges assessed" for the current tax year. N.J.S.A. 54:3-27.  Our Supreme Court has concluded that this tax payment requirement does not violate a taxpayer's due process rights. New York, Susquehanna and W.R.R. Co. v. Vermeulen, 44 N.J. 491, 501-03 (1965); see also Jefferson-Halsey Roads Assocs., L.P. v. Parsippany-Troy Hills Twp., supra, 13 N.J. Tax 138, 139 (App. Div. 1993), appeal dismissed, 135 N.J. 298 (1994).  Moreover, the "United States Supreme Court has similarly ruled that a state may satisfy due process by requiring payment prior to hearing so long as a refund or other monetary remedy process is afforded." J.L. Muscarelle, Inc. v. Saddle Brook Twp., 15 N.J. Tax 164, 167 (App. Div. 1994) (citing McKesson Corp. v. Division of Alcoholic Beverages and Tobacco, 496 U.S. 18, 37-39, 110 S.Ct. 2238, 2250-51, 110 L.Ed. 2d 17, 36-37 (1990).

One of the statutory remedies accorded taxpayers who successfully challenge a local property tax assessment is set forth in N.J.S.A. 54:3-27.2.  N.J.S.A. 54:3-27.2 provides, in part, that when:

a taxpayer is successful in an appeal from an assessment on real property, the respective taxing district shall refund any excess taxes paid, together with interest thereon from the date of payment at a rate of 5% per annum, less any amount of taxes, interest, or both, which may be applied against delinquencies. . . within 60 days of the date of final judgment.

[N.J.S.A. 54:3-27.2.]

Applying the standards set forth under Crowe, supra, 90 N.J. at 132-134, the grant of injunctive relief in the above matter would be inappropriate. Plaintiffs will not suffer any irreparable harm or injury as a result of defendant's assessment and collection of real estate taxes against the subject property; the applicable law is well-settled, disapproving of the preclusion of the assessment and collection of real estate taxes; relieving plaintiffs of their obligation to pay and timely remit real estate taxes due and owing would unfairly discriminate against and inappropriately shift the burden to Montclair Township residents who timely remit payment of their real estate tax obligations; and the Township of Montclair would suffer an economic hardship and be unable to provide essential government services if plaintiffs, and other similarly situated taxpayers, were relieved of their legal obligation to remit real estate taxes due and owing during the pendency of a tax appeal proceeding.

Moreover, enjoining a tax assessor from levying a tax assessment or a tax collector from remitting invoices for the payment of real estate taxes is contrary to sound principles of public policy. Ridgefield Park, supra, 31 N.J. at 428. Our State affords aggrieved taxpayers a legal remedy to challenge the assessment of real estate taxes that they deem excessive. Taxpayers must file a petition of appeal with the county board of taxation on or before April 1, or 45 days from the date the bulk mailing of the assessment notice is completed, whichever is later. N.J.A.C. 18:12A-1.6(c). When the assessed value of the property exceeds $1,000,000, a taxpayer has the option to file a petition of appeal with the county board of taxation or directly file a complaint with the Tax

41

Court. N.J.A.C. 18:12A-1.6(c).  Here, plaintiffs have accorded themselves of their statutorily available remedy by filing a 2011 tax appeal with the Essex County Board of Taxation, and challenging the board's judgment before the Tax Court.  If plaintiffs are able to overcome the presumption of validity that attaches to the quantum of the tax assessment and prove, by a preponderance of the evidence, that the ratio of assessment to fair market value exceeds the upper limit of the Chapter 123 ratio, the court will enter judgment reducing the 2011 tax assessment on the subject property. See N.J.S.A. 54:51A-6(a); N.J.S.A. 54:1-35a(b).  In addition, plaintiffs may thereafter be entitled to relief from the 2012 and 2013 tax year assessments by application of the Freeze Act.  Plaintiffs will suffer no irreparable harm in this matter that cannot be adequately redressed by a potential reduction in the subject property's 2011 local property tax assessment and a corresponding refund of taxes paid, plus accrued interest thereon.

Accordingly, for the reasons set forth above, plaintiffs' motion for injunctive relief is denied.

### 2. Reassessment; Freeze Act

Plaintiffs motion further demands: (1) a "reassessment[] downward in plaintiffs favor for tax years 2009-2017" based on the Freeze Act and the Residential Appraisal Summary Report prepared by Robert P. Jaffe; (2) "reassessments downward since 2009 because defendant Montclair [Township] in contumacious defiance of [Essex County Board of Taxation] Commissioner Gaccione's order, entered unilateral overassessments into plaintiff's tax file and records in early December, 2009;" and (3) "[c]arrying over the reassessments due for land and improvements from 2010 through 2017 based on NJ's Freeze Act, NJSA [sic] 54:51A-8."  In essence, plaintiffs request this court enter an order reducing the tax assessment on the subject

property, without trial, based on application of the Freeze Act and plaintiffs' appraisal report that opines on the value of the subject property as of October 1, 2010.

The efficacy of plaintiffs' argument for application of the Freeze Act, N.J.S.A. 54:51A-8, was fully addressed by the court in paragraph C, subparagraph 3, infra. Accordingly, the court will not repeat, nor restate its factual findings and conclusions of law with respect to those issues. The court is satisfied that no judgment has issued from the Tax Court or Essex County Board of Taxation to which N.J.S.A. 54:51A-8 can be applied, or for which N.J.S.A. 54:3-26 has not already been applied.

When the court is satisfied, following presentation of all evidence at trial, that the proofs sustain a finding "that the ratio of the assessed valuation of the subject property to its true value exceeds the upper limit or falls below the lower limit of the common level range, it shall enter judgment revising the taxable value of the property by applying the average ratio to the true value of the property except as hereinafter provided." N.J.S.A. 54:51A-6.

However, "original assessments and judgments of county boards of taxation are entitled to a presumption of validity." MSGW Real Estate Fund, LLC v. Borough of Mountain Lakes, 18 N.J. Tax 364, 373 (Tax 1998). The presumption "attaches to the quantum of the tax assessment. Based on this presumption, the appealing taxpayer has the burden of proving that the assessment is erroneous." Pantasote Co. v. City of Passaic, 100 N.J. 408, 413 (1985) (citing Riverview Gardens v. North Arlington Borough, 9 N.J. 167, 174 (1952)). The "presumption is not simply an evidentiary presumption serving only as a mechanism to allocate the burden of proof. It is, rather, a construct that expresses the view that in tax matters, it is to be presumed that governmental authority has been exercised correctly and in accordance with law." MSGW Real Estate Fund, LLC, supra, 18 N.J. Tax at 374 (citing Powder Mill, I Assocs. v. Hamilton Township, 3 N.J. Tax

43

439 (Tax 1981)). "The presumption of correctness. . . stands, until sufficient competent evidence to the contrary is adduced." Little Egg Harbor Township v. Bonsangue, 316 N.J. Super. 271, 285-86 (App. Div. 1998). A taxpayer can only rebut the presumption by introducing "cogent evidence" of true value. That is, evidence "definite, positive and certain in quality and quantity." MSGW Real Estate Fund, LLC, supra, 18 N.J. Tax at 413 (quoting Aetna Life Ins. Co., supra, 10 N.J. 99 (1952)). Therefore, at the close of the plaintiff's proofs, the court must be presented with evidence that raises a "debatable question as to the validity of the assessment." Id. at 376. Only after the court is satisfied that a plaintiff has presented cogent evidence sufficient to overcome the presumption of validity should the court proceed to "weigh and evaluate all the evidence and determine whether the plaintiff has demonstrated, by a preponderance of the evidence, that the assessment should be adjusted." Id. at 376-77.

Before the court is plaintiffs' tax appeal challenging the 2011 assessment on the subject property. No trial has been conducted in this matter. Thus, no determination can be made by the court whether plaintiffs' have presented credible evidence sufficient to overcome the presumption of validity that attaches to the quantum of the 2011 local property tax assessment. Moreover, it would be premature for this court to weigh and/or evaluate the appraisal report of Robert P. Jaffe, and determine whether the subject property's 2011 local property tax assessment warrants adjustment.

Plaintiffs' motion fails to furnish the court with any legal or equitable basis to enter a reduction in the tax assessment for the subject property for the 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016 and 2017 tax years.

Accordingly, for the above stated reasons, plaintiffs' motion to "enter reassessments downward in plaintiffs' favor for tax years 2009-2017" is denied.

44

3.  Motion to vacate December 14, 2011 order

Plaintiffs' motion also requests the court enter an order "[v]acating the 2011 order of Mala Narayanan that plaintiff could not recover refunds plus interest from defendant for 2011 based on misapplication of NJ's Freeze Act."

The court begins its analysis with the restatement of a well-settled principle: the assessment and taxation of real property is an annual event, with each tax year standing as a separate assessment. "Each annual assessment of property for tax purposes is separate and distinct from the assessment for any other year. In view of the changing facts which an assessor may face from year to year, the correct assessment is not determined until October 1 of the pretax year." Jackson Twp. v. Marsyll of B.B., Inc., 3 N.J. Tax 386, 389 (Tax 1981) (internal citations omitted); see also Aetna Life Ins. Co. v. Newark, 10 N.J. 99, 103 (1952); Boys Club of Clifton, Inc. v. Twp. of Jefferson, 72 N.J. 389, 405 (1977); City of Ventnor City v. Interdenominational Foreign Missionary Soc., 13 N.J. Tax 445, 452-453 (Tax 1993), aff'd, 15 N.J. Tax 160 (App. Div. 1994); Gottdiener v. Roxbury Twp., 2 N.J. Tax 206, 215 (Tax 1980); Savage Mills Enters. v. Borough of Little Silver, 29 N.J. Tax 295, 305 (Tax 2016).

This court's jurisdiction to review local property tax assessments is delineated by statute. An aggrieved taxpayer can challenge each successive year's local property tax assessment by appealing such assessment to the county board of taxation or Tax Court, provided that they satisfy the statutory jurisdictional requirements. N.J.S.A. 54:3-21; N.J.S.A. 54:51A-9; R. 8:4-1. N.J.S.A. 54:3-21, provides, in part, that:

> a taxpayer feeling aggrieved by the assessed valuation of the taxpayer's property, or feeling discriminated against by the assessed valuation of other property in the county, or a taxing district which may feel discriminated against by the assessed valuation of property in the taxing district, or by the assessed valuation of property in another taxing district in the county, may on or before April 1, or 45

45

days from the date the bulk mailing of notification of assessment is completed in the taxing district, whichever is later, appeal to the county board of taxation by filing with it a petition of appeal; provided, however, that any such taxpayer or taxing district may on or before April 1, or 45 days from the date the bulk mailing of notification of assessment is completed in the taxing district, whichever is later, file a complaint directly with the Tax Court, if the assessed valuation of the property subject to the appeal exceeds $1,000,000. In a taxing district where a municipal-wide revaluation or municipal-wide reassessment has been implemented, a taxpayer or a taxing district may appeal before or on May 1 to the county board of taxation by filing with it a petition of appeal or, if the assessed valuation of the property subject to the appeal exceeds $1,000,000, by filing a complaint directly with the State Tax Court.

[N.J.S.A. 54:3-21.]

Moreover, N.J.S.A. 54:51A-9 identifies the time period that a local property tax appeal matter shall be taken to the Tax Court. N.J.S.A. 54:51A-9 provides, in part, that:

a. Except as otherwise provided in this section, a complaint seeking review of adjudication or judgment of the county board of taxation shall be filed within 45 days of the service of the judgment.

b. Direct appeals to the Tax Court of assessments of property with an assessed valuation in excess of $750,000.00 as provided in R.S.54:3-21 shall be filed on or before April 1 of the tax year or 45 days from the date the bulk mailing of notifications of assessment is completed for the taxing district, whichever is later, or with regard to added or omitted assessments, on or before December 1 of the year of levy, or 30 days from the date the collector of the taxing district completes the bulk mailing of tax bills for added assessment or omitted assessments, whichever is later.

[N.J.S.A. 54:51A-9.]

The Tax Court is a "court of limited jurisdiction." McMahon, supra, 195 N.J. at 542-543 (2008). The court's "jurisdiction is constrained by the language of its enabling statutes." Prime Accounting Dept., supra, 212 N.J. at 505. The statutory jurisdiction conferred on the court is expressed, in part, as the authority "to review actions or regulations with respect to a tax matter of. . . (2) [a] county board of taxation; (3) [a] county or municipal official…" N.J.S.A. 2B:13-2.

46

However, strict compliance with filing deadlines is a crucial condition precedent to conferring jurisdiction on the court. As our Supreme Court has expressed, the "failure to file a timely appeal is a fatal jurisdictional defect." F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 424-25 (1985). Taxpayers are required to "file timely. . . appeals and that they are barred from relief if they fail to do so." Hackensack City v. Bergen County, 24 N.J. Tax 390, 401 (App. Div. 2009) (quoting Horrobin v. Director, Division of Taxation, 1 N.J. Tax 213, 216 (Tax 1979)). See also Mayfair Holding Corp. v. North Bergen Township, 4 N.J. Tax 38, 41 (Tax 1982). A "strict adherence to statutory time limitations is essential in tax matters, borne of the exigencies of taxation and the administration of local government." F.M.C. Stores Co., supra, 100 N.J. at 424-25 (citing Princeton Univ. Press v. Borough of Princeton, 35 N.J. 209, 214 (1961)). Thus, the failure to timely file a complaint will deprive the court of jurisdiction even in the absence of harm to the defendant. Lawrenceville Garden Apartments v. Township of Lawrence, 14 N.J. Tax 285 (App. Div. 1994). A court's subject-matter jurisdiction cannot be conferred, nor waived, by agreement of the parties. See R. 4:6-2(a); R. 4:6-7.

On December 9, 2011, Judge Narayanan conducted a plenary hearing with respect to the court's subject matter jurisdiction to review plaintiffs' alleged tax appeals for the 2009 and 2010 tax years on the subject property. Following the hearing, and relying on the legal principles espoused above, on December 13, 2011, Judge Narayanan delivered an oral opinion concluding that the court lacked subject matter jurisdiction over plaintiffs' tax appeals for the 2009 and 2010 tax years. However, the court concluded that the Tax Court enjoyed subject matter jurisdiction over plaintiffs' 2011 tax year appeal. On December 14, 2011, Judge Narayanan entered an order memorializing the conclusions reached in that opinion.

Thereafter, plaintiffs' submitted to the court a motion for reconsideration of the December 14, 2011 order. On February 23, 2012, Judge Narayanan issued a comprehensive letter opinion, accompanied by an order denying "plaintiffs' motion to reconsider and vacate this court's Order of December 14, 2011."

Plaintiffs took no appeal of the December 14, 2011 order or February 23, 2012 order. However, plaintiffs now urge the court to vacate the December 14, 2011 order.

R. 4:50-1 authorizes our trial courts to grant relief to a party from a judgment or order when the movant demonstrates certain criteria have been met. Specifically, R. 4:50-1 provides, in part:

> On motion, with briefs, and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial. . . ; (c) fraud. . . , misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order.
>
> [R. 4:50-1.]

A motion submitted under the auspices of R. 4:50-1 is addressed to the sound discretion of the trial court, "which should be guided by equitable principles in determining whether relief should be granted or denied." Hous. Auth. of Morristown v. Little, 135 N.J. 274, 282-283 (1994) (citing Hodgson v. Applegate, 31 N.J. 29, 37 (1959); Shammas v. Shammas, 9 N.J. 321, 328 (1952)). Motions submitted under R. 4:50-1 "must be filed within a reasonable time." Deutsche Bank Trust Co. Americas v. Angeles, 428 N.J. Super. 315, 319 (App. Div. 2012). Moreover,

motions which seek relief under R. 4:50-1(a), (b) and (c) must be filed within a year of the judgment. Ibid.

However, it is well established that a R. 4:50-1 motion "may not be used as a substitute for a timely appeal." Wausau Ins. Co. v. Prudential Prop. & Cas. Ins. Co., 312 N.J. Super. 516, 519 (App. Div. 1998) (citing Di Pietro v. Di Pietro, 193 N.J. Super. 533, 539 (App. Div. 1984)). The rule shall not "be used to convert a 'trial error' from which an appeal must be taken within 45 days into a 'mistake' which may be corrected within one year." Di Pietro, supra, 193 N.J. Super. at 539 (citing Hodgson, supra, 31 N.J. at 36-37).

Here, plaintiffs are not seeking to set aside a default judgment. Instead, plaintiffs contend the court committed an error in issuing its December 14, 2011 and February 23, 2012 orders concluding that it lacked subject matter jurisdiction to hear plaintiffs' 2009 and 2010 property tax appeals.

Subject matter jurisdiction confers on a court the authority to adjudicate a matter. Thus, a court is "duty bound to insure that it possesses jurisdiction in all matters that come before it." In re Mossavi, 334 N.J. Super. 112, 119 (Ch. Div. 2000). See Housing Authority of the City of Newark v. West, 69 N.J. 293, 304 (1976) (Pashman, J., dissenting) ("jurisdictional infirmities resulting from lack of subject matter jurisdiction may not be overcome nor waived by consent of the parties"). Only a court that possesses "subject matter jurisdiction is. . . empowered to act in a specific controversy. . . and to the extent it has jurisdiction over either the litigants or the subject matter of the controversy itself. . ." Last v. Audubon Park Assocs., 227 N.J. Super. 602, 606 (App. Div. 1988).

In tax appeal matters, our courts have endorsed the view that "both appealing taxpayers and taxing districts must adhere strictly to the deadlines prescribed by statute. Failure to file a

timely appeal is a fatal jurisdictional defect." F.M.C. Stores Co., supra, 100 N.J. at 425 (citing Clairol v. Kingsley, 109 N.J. Super. 22 (App. Div.), aff'd, 57 N.J. 199 (1970), appeal dismissed, 402 U.S. 902, 91 S.Ct. 1377, 28 L.Ed. 2d 643 (1971)). "Compliance with statutory filing requirements is an unqualified jurisdictional imperative, long sanctioned by our courts." Mayfair Holding Corp., supra, 4 N.J. Tax at 40. See also McMahon, supra, 195 N.J. at 539; Newark v. Fisher, 3 N.J. 488 (1950); Suburban Department Stores v. East Orange, 47 N.J. Super. 472 (App. Div. 1957); Prospect Hill Apts. v. Flemington, 1 N.J. Tax 224 (Tax 1979); Cherry Hill Twp. v. U.S. Life Ins. Co. of N.Y., 1 N.J. Tax 236 (Tax 1980). Thus, when a taxpayer has not timely complied with the statutory prerequisites for challenging a local property tax assessment, the court is deprived of subject matter jurisdiction. Accordingly, the court is satisfied that the fundamental and indispensable issue of the court's lack of subject matter jurisdiction does not fall within the purview of relief warranted under R. 4:50-1.

Nonetheless, plaintiffs' motion fails to establish any basis warranting relief under R. 4:50-1. Plaintiffs have not demonstrated that the court's December 14, 2011 and February 23, 2012 orders were entered by mistake, or as a result of inadvertence or surprise. In fact, the record reveals that plaintiffs and defendant submitted extensive legal briefs to the court and the court conducted an evidentiary hearing addressing the court's subject matter jurisdiction. Moreover, plaintiffs do not argue that any newly discovered evidence has been revealed that would require alteration of the court's December 14, 2011 order. Finally, plaintiffs do not assert that the December 14, 2011 or February 23, 2012 orders are void, have been satisfied, released or discharged, or that a prior judgment or order upon which it was based was reversed or otherwise vacated.

The sole basis for relief from the court's December 14, 2011 order seemingly stems from plaintiffs' allegation that defendant engaged in "contumacious defiance of [Essex County Tax

50

Board] Commissioner Gaccione's order]" by entering "unilateral overassessments into plaintiff's tax filed and records in early December, 2009." However, the record fails to support plaintiffs' allegations. As recited above, on October 27, 2009, the Essex County Board of Taxation issued a Memorandum of Judgment reducing the subject property's 2009 tax year local property tax assessment from $925,400 to $852,000. Said reduced assessment of $852,000 was carried forward on the subject property for the 2010 and 2011 tax years. Thus, defendant did not unilaterally alter the subject property's local property tax assessment. Rather, in response to the Essex County Board of Taxation's memorandum of judgment, defendant's tax assessor reduced the subject property's tax assessment in accordance with the judgment. See N.J.S.A. 54:3-26.

Accordingly, for the above stated reasons, plaintiffs' motion to vacate the court's December 14, 2011 order is denied.

## III.   Conclusion

The court concludes that sufficient grounds do not exist on which to grant plaintiffs' motions: (1) to compel discovery; (2) to admit facts into evidence; (3) to find defendant in contempt of court; (4) for entry of a writ of mandamus; (5) for leave of court to file an amended complaint; and (6) to vacate the court's December 14, 2011 order; enter "reassessments downward" for the 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016 and 2017 tax years; and for an injunction.

However, as stated above, the court grants leave, under R. 8:6-1(a)(4), directing defendant, Montclair Township, to: (i) furnish plaintiffs with answers to the Tax Court's Standard Interrogatories to be Served on Municipality within sixty (60) days of the date hereof; and (ii) furnish responses to plaintiffs' April 8, 2016 requests for admissions within thirty (30) days of the date hereof. In addition, the court directs plaintiffs to furnish defendant with copies of any

51

environmental studies, analysis and reports for the subject property (as such term is defined herein), that have not been previously furnished to defendant, within sixty (60) days of the date hereof.

Very truly yours,


/s/Hon. Joshua D. Novin, J.T.C.